RUTH E. CURRAN v. THOMAS J. NASH AND ANOTHER. HAROLD BUHLER, APPELLANT.[1]

October 31, 1947.

No. 34,488.

[1]Reported in 29 N. W. (2d) 436.

*Harroun, Anderson & Poseley,* for appellant.
*John Edmund Burke* and *Joseph P. Johnson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order overruling the special appearance of defendant Harold Buhler objecting to the jurisdiction of the court on the ground that he was a nonresident and that the court had not acquired jurisdiction over him or over the property described in the complaint.

According to the allegations of the complaint, Herman Buhler, a resident of Ramsey county, Minnesota, died testate in December 1945, naming his son, defendant Harold Buhler (hereinafter referred to as Buhler), a resident of California, as residuary devisee and legatee in his will. Defendant Thomas J. Nash was appointed executor of decedent's will in April 1946. The only property decedent had at the time of his death was his homestead in St. Paul, Minnesota, the real estate described in the complaint. The complaint alleged that in May 1946 Buhler executed a quitclaim deed to the property. Thereafter, in August 1946, this action was commenced, at which time the estate of decedent was still in the process of probate in Ramsey county. Plaintiff claimed that decedent was indebted to her for services rendered as a servant in his household in the sum of $920. Plaintiff did not file a claim in probate court, but commenced this action against Nash as executor and Buhler. On or about the date of the commencement of this action, the sheriff of Ramsey county made his return of "not found" as to Buhler. A few days afterward, plaintiff's attorney filed an affidavit for publication and obtained an order of the district court directing that service of the summons might be obtained by publishing the same in a St. Paul legal newspaper or by obtaining personal service of the summons outside the state upon Buhler. At the same time the attorney mailed a copy of the summons and complaint to Harold at his last-known address in California. On September 10, 1946, the sheriff of San Francisco county, California, made his return of "not found" as to Buhler, and thereafter the summons was pub-

lished in a St. Paul legal newspaper. Buhler appeared specially in district court, by his attorneys, and objected to the jurisdiction of the court. This appearance was overruled, and he was given time to answer the complaint. He assigns as error the order of the trial court overruling his special appearance objecting to the jurisdiction of the court.

The questions for determination are:

(1) Was the order of the trial court appealable?

(2) Has jurisdiction by the publication of the summons been obtained as to Buhler, a nonresident?

■ We hold that the order is appealable. It is an order denying the motion of Buhler appearing specially for the purpose of objecting to the jurisdiction of the court on the ground that he is a nonresident and that the court has not acquired jurisdiction over him or over the property described in the complaint. It gave him time to answer the complaint, thus determining his legal rights with reference to the jurisdictional matter, and required him to defend the action on the merits, based on the assumption by the court that it had jurisdiction over him.

In Plano Mfg. Co. v. Kaufert, 86 Minn. 13, 89 N. W. 1124, where the defendant appeared specially and moved the court to set aside the service of the summons on the ground that it was void, in that it was not directed to the defendant as provided for by the statute then in effect, the plaintiff moved the court to dismiss the appeal because it contended that the order was not appealable. It was there held that the order was appealable, as it (86 Minn. 15, 89 N. W. 1125) "determines his positive legal rights, and compels him to take upon himself the burden of defending the action on the merits when the court has no jurisdiction over him." See, also, Columbia Placer Co. v. Bucyrus Steam Shovel & Dredge Co. 60 Minn. 142, 62 N. W. 115; Hillary v. G. N. Ry. Co. 64 Minn. 361, 67 N. W. 80, 32 L. R. A. 448; First Nat. Bank v. Estenson, 68 Minn. 28, 70 N. W. 775; Strom v. Montana Cent. Ry. Co. 81 Minn. 346, 84 N. W. 46.

■ Has jurisdiction by the publication of the summons been obtained as to Buhler, a nonresident? In determining this, we must first consider whether this is an action in personam or one in rem so far as Buhler, the nonresident, is concerned. He contends that this is an action in personam, that no property belonging to him has been seized, and that therefore, being a nonresident, no jurisdiction was obtained over him. The trial court was of the opinion that it was an action in rem. It also reasoned that if plaintiff had attached the homestead there probably would have been no dispute that jurisdiction by publication could have been obtained, but it was of the opinion that it was not necessary to attach. It further said in part in its memorandum:

"* * * In effect, this is a proceeding for the establishment and enforcement of a lien upon the property described in the complaint which, because it was the homestead of the deceased was not, generally speaking, a part of his estate but nonetheless was subject to the payment of plaintiff's claim. It seems to the court that a description of the property intended to be charged with the amount of the claim is such a 'seizure' of the property as brings it within the jurisdiction of the court and makes the action one in rem.

"The court is of the opinion that its jurisdiction is within the purview of Minnesota Statutes 1945, Section 543.12(3)."

Minn. Const. art. 1, § 12, provides in part as follows:

"* * * A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law. *Provided, however,* that all property so exempted shall be liable to seizure and sale for any debts incurred to any person for work done or materials furnished in the construction, repair or improvement of the same, and *provided further,* that such liability to seizure and sale shall also extend to all real property for any debt incurred to any laborer or servant for labor or service performed."

This provision of the constitution does not automatically create a lien for indebtedness in the classes referred to therein, as in the in-

stant case, for labor or services performed. It provides only that the property which otherwise would have been exempt shall be liable to seizure and sale or such debts. In Nickerson v. Crawford, 74 Minn. 366, 369, 77 N. W. 292, 293, 73 A. S. R. 354, where the claim was that this provision of the constitution created a lien, the court said:

"* * * But the constitution furnishes no basis for any such claim. It does not make the specified debts a lien on the property, but merely provides that the otherwise exempt property shall be subject to seizure and sale for such debts. They may be a lien under some statute, but, so far as the constitution is concerned, debts of the enumerated classes only become liens on a homestead when reduced to judgment and docketed; and then they become liens on the homestead, the same as on any other real estate of the debtor."

See, also, Hasey v. McMullen, 109 Minn. 332, 123 N. W. 1078; In re Estate of Peterson, 198 Minn. 45, 268 N. W. 707; Anderson v. Johnson, 208 Minn. 152, 293 N. W. 131.

We believe that this action is one in personam. The district court had no power to make plaintiff's claim for services a lien on the premises, except to the extent that upon proper proof it could order the entry of judgment in favor of plaintiff for personal services rendered. This judgment, when docketed, would of course become a lien on all real estate owned as of that time by the person against whom the judgment was rendered. M. S. A. § 548.09. The constitutional provision merely enlarges the class of real estate upon which a judgment for personal services can operate so as to include the homestead. In an action for personal services, as in any other action for money, the court must render a judgment in personam before the plaintiff can docket the judgment and thus acquire a lien. Under the complaint in this action, the district court could not have imposed a lien except to the extent that it could have rendered a judgment in personam, which would be a lien when docketed by the clerk. In view of the fact that the matter we are considering is whether jurisdiction by publication of the summons was obtained as to Buhler, the nonresident, we consider the action as one in per-

sonam so far as he is concerned, as it is an action by plaintiff against Buhler and the executor to recover for services rendered by plaintiff.

M. S. A. § 543.11, provides for service by publication and personal service out of the state. Section 543.12 enumerates six conditions where service by publication confers jurisdiction. The only conditions for consideration here are those contained in paragraph (3) of said section, heretofore referred to in the trial court memorandum, and paragraph (6). Paragraph (3) provides that such service shall be sufficient "When the defendant is not a resident of the state, but has property therein, and the court has jurisdiction of the subject of the action." Paragraph (6) provides that such service is sufficient "When the action is to foreclose a mortgage or to enforce a lien on real estate." Paragraph (3) is the only one for consideration here, as paragraph (6) deals with the enforcement of an existing lien where the action is brought to foreclose a mortgage or enforce a lien, and not where the action is to establish a lien. We must then determine whether, under paragraph (3), the court in the instant case had jurisdiction of the subject of the action. It was of the opinion that the description of the property intended to be charged with the amount of the claim was such a seizure of the property as to bring it within the jurisdiction of the court.

In practice, the word "seizure" is defined in 3 Bouvier, Law Dictionary (3 Rev.) 3037, as follows:

"The act of taking possession of the property of a person condemned by the judgment of a competent tribunal to pay a certain sum of money, by a sheriff, constable, or other officer lawfully authorized thereto, by virtue of an execution, for the purpose of having such property sold according to law to satisfy the judgment."

Black, Law Dictionary (3 ed.) 1598, defines the word "seizure" in practice as follows:

"The act performed by an officer of the law, under the authority and exigence of a writ, in taking into the custody of the law the property, real or personal, of a person against whom the judgment

of a competent court has passed, condemning him to pay a certain sum of money, in order that such property may be sold, by authority and due course of law, to satisfy the judgment."

According to 38 Wd. & Phr. (Perm. ed.) 525, "The legal definition of the word 'seizure' is the taking possession of property by an officer."

The question here, as it appears to us, is whether the description of the property in the summons and complaint constituted such a seizure of the property as to give the court jurisdiction, as contemplated by § 543.12(3). Here, we have a situation where Buhler was a nonresident. The summons and complaint were not personally served upon him, and according to the pleadings he alienated the property described in the complaint by quitclaim deed prior to the time it would have been decreed to him in the probate proceedings pending in his father's estate. The real estate was not attached. As we see it, there was no seizure of the property, in the absence of an attachment or levy under execution, sufficient to bring it within the jurisdiction of the court. The case differs from Smith v. Smith, 123 Minn. 431, 144 N. W. 138, 52 L.R.A.(N.S.) 1061, in that there the defendants, nonresidents of the state, were personally served with the summons without the state, and the court there considered the action to be in rem. In the case at bar, according to the record, no service was ever made upon Buhler, the nonresident, unless it was by publication. There was no attachment or levy on the land. We hold that under the circumstances, without an attachment or levy on the real estate involved, the court did not acquire jurisdiction of the subject of the action as to the nonresident Buhler.

In Cabanne v. Graf, 87 Minn. 510, 513, 92 N. W. 461, 59 L. R. A. 735, 94 A. S. R. 722, this court said:

"The state has plenary jurisdiction over all property, real or personal, within its limits, and may seize and subject it to the payment of the debts of the owners thereof, whether citizens of the state or not, upon such reasonable notice as the legislature may prescribe.

But the power of the state personally to affect, by the judgments of its courts, citizens of another state, without personal service of process upon them within the state, is quite another matter. Prior to the decision in the case of Pennoyer v. Neff, 95 U. S. 714 [24 L. ed. 565], it was the law of this state, and in some other jurisdictions, that, if a nonresident defendant had property in this state, its courts had jurisdiction, without seizing it, to proceed by publication of the summons, and render a judgment in personam, valid within the state to the extent of any property of the defendant therein. Stone v. Myers, 9 Minn. 287 (303), 86 Am. D. 104; Cleland v. Tavernier, 11 Minn. 126 (194). Such, however, is not now the law, for a statute authorizing such a proceeding would not be due process of law. Kenney v. Goergen, 36 Minn. 190, 31 N. W. 210; Lydiard v. Chute, 45 Minn. 277, 47 N. W. 967; Plummer v. Hatton, 51 Minn. 181, 53 N. W. 460.

"Pennoyer v. Neff is the leading authority in support of the now well-settled proposition that, except as to proceedings affecting the personal status of the plaintiff, or in rem, or as to actions to enforce liens, or to quiet title, or to recover possession of property, or for the partition thereof, or to set aside fraudulent transfers thereof, or to obtain judgment enforceable against property seized by attachment or other process, no state can authorize its courts to compel a citizen of another state remaining therein to come before them and submit to their decision a mere claim upon him for a money demand, no matter what the prescribed mode of service of process against him may be. An attempt to do so is not due process of law. 2 Freeman, Judgm. §§ 564-567; Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586 [28 L. ed. 101]; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557 [33 L. ed. 918]; De La Montanya v. De La Montanya, 112 Cal. 101, 44 Pac. 345 [32 L. R. A. 82]; 53 Am. St. Rep. 165, and notes 181."

In Cousins v. Alworth, 44 Minn. 505, 507, 47 N. W. 169, 170, 10 L. R. A. 504, the court said:

"An action against a non-resident, although in form *in personam*, is in effect *in rem*, and it is only by attaching property that the court acquires jurisdiction to further proceed, and then only to the extent of the property attached. Kenney v. Goergen, 36 Minn. 190, (31 N. W. Rep. 210.)"

In Kenney v. Goergen, 36 Minn. 190, 191, 31 N. W. 210, an action to recover possession of personal property, Mr. Justice Mitchell said in part:

"Appellant cites numerous authorities to the effect that, where a defendant is a non-resident who has not been served with process, and who has not appeared in the action, it is the fact alone that he has property in the state subject to attachment that enables the court to obtain jurisdiction. This is elementary, * * * the *mere* existence of property within the state does not give the court jurisdiction. * * * and it is only by *attaching* the property that the court acquires jurisdiction, and then only to the extent of the property attached. If no property be found on which to levy, there is nothing to which the jurisdiction can attach, and the court could proceed no further."

The subject of the action was not the real estate described in the pleadings in the case at bar. The real subject of the action was to recover a judgment against the defendants, including Buhler, the nonresident. There was no seizure of property belonging to him in the state of Minnesota. We therefore hold that the trial court had no jurisdiction over Buhler, and his motion to dismiss should have been granted.

Reversed.